IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LISA DARLENE COCHRAN            )
                                )
v.                              )     No. 1:13-0045
                                )     Judge Nixon/Bryant
SOCIAL SECURITY ADMINISTRATION  )


To:     The Honorable John T. Nixon, Senior Judge


## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial

review of the final decision of the Social Security Administration ("SSA" or "the

Administration") denying plaintiff's application for disability insurance benefits, as provided

under Title II of the Social Security Act.  The case is currently pending on plaintiff's motion

for judgment on the administrative record (Docket Entry No. 16), to which defendant has

responded (Docket Entry No. 23).  Upon consideration of these papers and the transcript of

the administrative record (Docket Entry No. 10),[1] and for the reasons given below, the

undersigned recommends that plaintiff's motion for judgment be DENIED and that the

decision of the SSA be AFFIRMED.


### I.  Introduction

Plaintiff filed her application for benefits in December 2009, alleging disability

onset as of April 18, 2009, due to chronic back problems, seizures, diabetes, and severe

_____

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

depression. (Tr. 11, 133) Her application was denied at the initial and reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of her case by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on September 20, 2011, when plaintiff appeared with counsel and gave testimony. (Tr. 29-57) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until November 4, 2011, when he issued a written decision finding plaintiff not disabled. (Tr. 11-22) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

2. The claimant has not engaged in substantial gainful activity since April 19, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease; seizure disorder; diabetes mellitus; carpal tunnel syndrome; left tennis elbow; depression; and anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no climbing of ladders, ropes, or scaffolds; no work around hazardous machinery or at unprotected heights; no commercial driving; no work around large bodies of water; limited to simple, repetitive, routine tasks; occasional bending; workplace changes should be gradual and infrequent; frequent, but not constant, handling/grasping; and able to alternate sitting and standing at will throughout the 8-hour workday.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on September 7, 1963 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from April 18, 2009, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 13, 15, 20-22)

On March 5, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

Neither party has endeavored to summarize the medical record in this case. Instead, the parties make reference to specific items of evidence as necessary to support their

legal arguments, addressed below. The undersigned therefore incorporates herein the ALJ's summary of the medical record, rendered at pages six through ten of his decision (Tr. 16-20):

> In terms of the claimant's alleged back problems, an April 2009 MRI of the lumbar spine revealed the following: small left L3-4 foraminal disc protrusion contiguous with the left L3 root without displacement; small right paracentral disc protrusion at L4-5 contiguous with the proximal aspect of the left L5 root; and slight central disc protrusion into the anterior epidural fat at L5-S1. Ex. 4F. The claimant underwent physical therapy for her back pain in May and June 2009. Ex. 5F. The claimant reported pain that was constantly present all day and that did not improve with therapy. Ex. 5F. Follow-up treatment notes from Dr. Jeff Norton indicate that the claimant was referred for an epidural steroid injection and was encouraged to continue physical therapy. Ex. 6F. April 2011 treatment notes from the claimant's treating physician document complaints of mid and low back pain which radiated in to both arms and the left lower extremity. Ex. 22F. Diagnoses from that visit included chronic low back pain, neck pain, shoulder pain, and degenerative disc disease. Ex. 22F.
>
> Regarding the claimant's seizure disorder, March 2008 treatment notes from Dr. Lucas Van Orde document that the claimant reported taking Depakote to control her seizures since age 18. At that time, the claimant reported having a seizure, her first in several years. Ex. 7F. February 2009 treatment notes state that the claimant's seizures were controlled by Depakote. Ex. 7F. June 2009 treatment notes state that the claimant's last seizure had been around February 2008. Ex. 9F. February 2010 treatment notes from treating neurologist Dr. Maria Dongas document that the claimant's seizures have been kept under control with Depakote. Dr. Dongas stated that the claimant was advised not to work with heavy moving machinery and in unprotected elevated places; cannot drive a commercial vehicle; and cannot swim unaccompanied/unsupervised. Ex. 7F. Notably, Dr. Dongas did *not* state that the claimant was unable to work. Ex. 7F.
>
> The claimant also has diabetes mellitus. June 2009 treatment notes document that the claimant was diagnosed with diabetes mellitus in January 2008. Ex. 9F. June 2009 treatment notes from another physician document that the claimant's diabetes was fairly well-controlled with medication. Ex. 18F. The claimant denied any episodes of hypoglycemia, hyperglycemia, vision changes, polydipsia or polyuria, paresthesias, chest pain, claudication, or significant

change in weight.  Ex. 18F.

Additionally, March 2010 treatment notes document that the claimant underwent a carpal tunnel release on the right in June 2008.  Ex. 18F.  March 2010 treatment notes also document a diagnosis of carpal tunnel syndrome on the left and note positive Tinel's and positive Phalen's testing.  The claimant was referred to an orthopedic specialist.

Further, April 2011 treatment notes document a diagnosis of tennis elbow on the left.  The claimant reported pain in her left elbow and stated that an elbow strap was not helping.  Ex. 22F.

The claimant underwent a consultative physical examination for range of motion testing on her back in April 2010.  Ex. 11F.  The claimant did not participate in the dorsiflex or extension portions of the range of motion testing.  She was able to laterally flex left 10 degrees and right 10 degrees during lateral flexion of the thoracic spine.  Ex. 11F.  The claimant was noted to move from seated to standing unremarkably and ambulate without assistance at a normal pace.  Toe lift, heel walk, and deep tendon reflexes were all within normal limits.  Ex. 11F.

Regarding the claimant's alleged mental impairments, the claimant was referred by her primary care physician for a psychiatric diagnostic interview with Rodney Poling, M.D., in February 2008.  Ex. 8F.  The claimant reported some problems with depressed mood, which had increased in the previous several weeks.  Ex. 8F.  Dr. Poling diagnosed the claimant with bipolar disorder (mild to moderate) and assessed her with a global assessment of functioning (GAF) score of 50, indicating serious impairment in social and/or occupational functioning.  DSM-IV-TR (2000 text revision).  Ex. 8F.  . . .

July 2008 treatment notes state that the claimant reported doing well, and "doesn't need therapist now."  Ex. 7F.  Further, June 2009 treatment notes from Dickson Medical Associates document that the claimant's depression was well controlled and that the claimant "continues to do well."  Ex. 9F.  January 2011 treatment notes from the Mental Health Cooperative document a diagnosis of major depressive disorder.  Ex. 20F.

The claimant underwent a consultative psychological evaluation in April 2010, conducted by examining psychologist Dr. Dawn Brandau.  Ex. 12F.  The

claimant stated that over the past month, she had been at times happy, at times feeling empty, and at times irritable. Ex. 12F. The claimant stated that she experiences periods of depression and feels down for a few days at a time about once every month. Ex. 12F. The claimant stated that during the times she experiences depression, she feels sadness, experiences anhedonia, an increased appetite, fatigue, irritability, and much difficulty concentrating. Ex. 12F. The claimant was noted to exhibit mild impairment in her short term memory during testing, and moderate impairment in her ability to sustain concentration. Ex. 12F. The claimant performed in the average range on all memory testing. Ex. 12F. Notably, the claimant reported managing her medications with little or no difficulty. Ex. 12F. Additionally, the claimant stated that she can prepare elaborate meals (hamburgers, tacos, etc.) and can perform other household chores such as wash dishes, vacuum, sweep, and do laundry. She also stated that she is able to complete some yard work such as planting flowers and mowing her yard, even though these activities cause her back pain. Ex. 12F. The claimant stated that she has a driver's license and drives regularly. Ex. 12F. Dr. Brandau diagnosed the claimant with major depressive disorder, moderate, in partial remission and anxiety disorder. Ex. 12F. Further, Dr. Brandau assessed the claimant with a global assessment of functioning (GAF) score of 65, indicating some mild difficulty in social and/or occupational functioning. DSM-IV-TR (2000 text revision).

The claimant testified that she lives with her 7 year old granddaughter, of whom she has custody. The claimant stated that her back pain radiates into her left leg and foot. The claimant stated that she had to quit working in April 2009, because her back pain had become too severe. However, treatment notes from June 2009, document no complaints of any back-related ailments, and the claimant had a completely normal musculoskeletal and neurological examination. Ex. 9F. She further testified that she seldom drives, although she reported in April 2010 that she drove daily. Ex. 12F. The claimant stated that she has to lie down about 2 hours during the day due to her back pain. ...

As for the opinion evidence, the objective medical findings and treatment notes document the claimant's inability to perform more than a limited range of light work as detailed above. I give great weight to their findings. The limitations regarding the use of hands, postural limitations, and environmental limitations are added after viewing the evidence in a light most favorable to the claimant.

State agency evaluating physician Dr. James P. Gregory completed a physical residual functional capacity assessment regarding the claimant in April 2010. Ex. 13F. Dr. Gregory opined that the claimant can lift and/or carry up to 50 pounds occasionally and 25 pounds frequently; can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; and can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. Ex. 13F. State agency evaluating physician Dr. Frank Pennington affirmed the opinion of Dr. Gregory in June 2010. Ex. 16F. The opinions of the state agency evaluating physicians are from a non-treating, non-examining source, and additional evidence has been received since that time. This additional evidence supports some greater limitations than the limitations opined by the state agency physicians. These opinions are given some, but not great weight.

Treating physician, Dr. Julie Perrigin, completed a medical source statement in December 2010. Ex. 19F. Dr. Perrigin opined that the claimant could lift and carry up to 10 pounds occasionally; could sit, stand, or walk for 1 hour at one time and for a total of 3 hours each in an 8-hour workday; could never reach overhead and could occasionally reach in other directions; could never handle, finger, feel, push, or pull; could occasionally operate foot controls with the right foot and never with the left foot; could never climb, balance, stoop, kneel, crouch, or crawl; and could tolerate no exposure to unprotected heights, moving mechanical parts, operating a motor vehicle (commercially), extreme cold, or vibrations. Ex. 19F. Dr. Perrigin's opinion is inconsistent with her own treatment notes and is too extreme. For instance, although her opinion states that the claimant can never handle, finger, feel, push/pull, or reach overhead with either extremity, nor do any postural activities, the claimant can obviously perform some of these activities, as she takes care of her young granddaughter. Further, the claimant handwrote her function report at [Exhibit] 4E, so she can obviously use her hands to write. She indicated in her report that she also drives and reported to a consultative examining psychologist that she drives daily. Ex. 4E, 12F. Dr. Perrigin's opinion is overly restrictive and inconsistent with the evidence of record. As a result, it is given little weight.

Consultative examining psychologist Dr. Dawn Brandau opined in April 2010 that the claimant had moderate impairment in her ability to sustain concentration; moderate impairment in long term and remote memory functioning; mild impairment in social relating; and moderate impairment in the ability to adapt to change. Ex. 12F. Dr. Brandau's opinion is consistent

with the medical evidence and other substantial evidence of record, which does document some mental limitations as a result of the claimant's mental impairments. Therefore, Dr. Brandau's opinion is given significant weight.

State agency mental health consultant Rebecca A. Hansmann, Psy. D. completed a psychiatric review technique and mental residual functional capacity assessment regarding the claimant in April 2010. Ex. 14F, 15F. Dr. Hansmann opined that the claimant had moderate restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. Ex. 14F. More specifically, Dr. Hansmann opined that the claimant can do 1,2,,3,4 step tasks but cannot make decisions at the executive level; can maintain concentration, persistence, or pace for periods of two hours or more and can persist over a full work week with the above limitations; can interact with others effectively; and can adapt to infrequent change. Ex. 15F. State agency evaluating psychologist Dr. Victor O'Bryan affirmed the opinion of Dr. Hansmann in June 2010. Ex. 17F. The opinions of the state agency mental health consultants are inconsistent with the medical evidence and do not adequately consider the claimant's subjective complaints. For example, the claimant has reported instances of problems concentrating and demonstrated a moderate limitation in this area in her consultative examination. Ex. 12F. Therefore, the opinions of the state agency mental consultants are given some, but not great weight.

Adrienne Hollis, APN, completed a mental medical source statement in February 2011. Ex. 21F. Ms. Hollis opined that the claimant had marked limitations in the ability to function in all areas, including completing even simple tasks. . . .

The claimant's social worker, Sheila Levine, completed a medical source statement contained in Exhibit 10F. This opinion consists mainly of a number of questions with an area to check either "Yes" or "No." The responses are somewhat inconsistent with the opinion provided at Exhibit 21F. For example, Ms. Levine indicated that the claimant is capable of remembering and carrying out simple, 1-2 step instructions and maintaining a work routine without frequent breaks for stress-related reasons. Ms. Hollis had indicated that the claimant had a "marked" limitation in understanding, remembering, and carrying out even simple instructions. Although Ms. Levine indicated that the claimant would not be able to maintain a regular work schedule without

missing frequently due to psychological issues, she also indicated that the claimant can maintain an ordinary work routine without inordinate supervision and can respond appropriately to normal stress and routine changes. Ex. 10F. . . .

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). While this is a deferential standard, it is not a trivial one; a finding of substantial evidence must "take into account whatever in the record fairly detracts from its weight." Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). Nevertheless, the SSA's decision must stand if substantial evidence supports the conclusion reached, even if the record contains substantial evidence that would have supported an opposite conclusion. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f). "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry ... the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.  Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.  See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003).  Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination.  Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).  In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony.  See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere.  See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

## C. <u>Plaintiff's Statement of Errors</u>

Plaintiff first argues that the ALJ erred in failing to consider or discuss the evidence supporting her testimony that her pain medication causes her to sleep and "pretty much knocks [her] out." (Tr. 44)  In support of this argument, plaintiff cites the fact that the ALJ only mentions medication side effects in describing his duty to consider them, and nowhere else within his decision are such side effects explicitly considered.  Plaintiff further asserts that

> The record contains numerous references to the side effects of Cochran's medications.  For example, Dr. Rodney Poling, MD, who diagnosed Cochran with "Bipolar Disorder, Mixed Type Mild To Moderate 296.62" Ex. 8F (Tr. at 307), also described one of the negative side effects of Effexor XR, an ... anti-depressant, stating: "Stop Effexor and Xanax.  I believe the Effexor may be aggravating her mood swings."  Ex. 8F (Tr. at 20)

(Docket Entry No. 16-1 at 7-8)  As defendant points out, however, this reference to a possible negative side effect from Effexor was made in February 2008, more than a year before plaintiff stopped working.  (Tr. 303)  Moreover, following a brief medical leave from her job (Tr. 321), Effexor was re-prescribed (Tr. 319) and plaintiff was subsequently noted to be back at work and doing well on Effexor.  (Tr. 325)  In addition, plaintiff does not cite, nor has the undersigned found, any other of the "numerous references" in the record to negative medication side effects.  If such side effects existed, plaintiff evidently did not think enough of them to mention them to her physicians.  In fact, the record establishes that plaintiff at one point had no complaints under her prescription medication regime, and in fact desired to continue her  prescriptions with generic equivalents in light of the impending loss of her insurance following her layoff from work.  (Tr. 338-40)  It is implied in the ALJ's decision

that he did not credit plaintiff's testimony to debilitating fatigue from her pain medication, given that such side effect is not supported by the medical record which the ALJ reviewed, nor is it consistent with plaintiff's reported activity level, including providing daily care for her young granddaughter (an activity which was found to undermine the credibility of plaintiff's subjective complaints and the assessments of certain physicians (Tr. 18-20)). The undersigned finds no error here.

Plaintiff next takes issue with the ALJ's finding that her subjective complaints are less than fully credible, essentially asserting that the ALJ failed to properly weigh in her favor the fact that plaintiff consistently sought relief of her pain and depression, including through physical and psychotherapy, but instead summarily dismissed her complaints with a boilerplate finding that her complaints are not credible to the extent they are inconsistent with the ALJ's finding of her residual functional capacity. However, following his initial, general determination that plaintiff's more dire subjective complaints of symptoms were not credible, the ALJ proceeded to make specific reference to the evidence that supported that credibility finding, noting that plaintiff's seizures were reported to be controlled on Depakote; that she declined to participate in spinal range-of-motion testing during her consultative examination, but was noted to move from seated to standing unremarkably and ambulate without assistance at a normal pace; and, that she reported a rather robust list of daily activities to the consultative psychological examiner, including cooking, housekeeping, planting flowers and mowing, and regular driving. (Tr. 16-18) The ALJ further addressed plaintiff's hearing testimony, as follows:

The claimant testified that she lives with her 7 year old granddaughter, of whom she has custody. The claimant stated that her back pain radiates into

13

her left leg and foot. The claimant stated that she had to quit working in April 2009, because her back pain had become too severe. However, treatment notes from June 2009, document no complaints of any back-related ailments, and the claimant had a completely normal musculoskeletal and neurological examination. Ex. 9F. She further testified that she seldom drives, although she reported in April 2010 that she drove daily. Ex. 12F. The claimant stated that she has to lie down about 2 hours during the day due to her back pain. The claimant's testimony is not consistent with the other evidence of record; however, I do give the claimant's testimony regarding her daily back pain some weight and have reflected those limitations in the above-stated residual functional capacity.

(Tr. 18)  While plaintiff cites evidence from her chiropractor's 2006 treatment notes (Tr. 212) as demonstrating her longitudinal struggle with back pain (Docket Entry No. 16-1 at 9), there was great variance in the notations made about her symptoms at the frequent chiropractor visits, as when she was noted to be largely improved only five days after the visit in which she complained of pain with virtually all activities. (Cf. Tr. 212 with Tr. 216; see also Tr. 243)  More importantly, plaintiff was working full time during this period of chiropractic treatment. (Tr. 189)  In view of this evidence, as well as the objective film studies which showed only mild abnormalities and the opinion evidence, discussed below, the undersigned finds substantial evidentiary support for the ALJ's credibility finding, which was not in fact rendered in boilerplate , conclusory fashion. Such findings are due considerable deference on judicial review, Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003), and the undersigned finds no reason to disturb the credibility finding in this case.

Plaintiff next argues that the ALJ erred in failing to appropriately consider the opinions of her treatment providers who are not physicians or psychiatrists/psychologists, but are "other sources" under the regulations. See 20 C.F.R. § 404.1513(a), (d).  To provide

further clarity to its evaluation of this type of opinion evidence, the SSA has promulgated Social Security Ruling 06-3p, which contemplates the inclusion in claimants' medical records of opinions from health care professionals who are not "acceptable medical sources" under the regulations, but who are nonetheless increasingly more involved with first-line care in the offices of both physical and mental health care providers, and who thus may in some cases be the best sources of information as to the effects of their patients' impairments. Such "other source" opinions must be considered in reaching the disability determination. 20 C.F.R. § 404.1513(a), (d). However, SSR 06-3p does not require ALJs to give explicit attention in their decisions to every shred of opinion evidence, as detailed below:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision....

2006 WL 2329939, at *6. Thus, the ALJ *must* explain his or her weighing of such evidence in cases where the evidence is held to outweigh a treating source's medical opinion, as evidence of the claimant's ability to perform work. Otherwise, the ALJ should make explicit his consideration of "other source" evidence, if not the actual weight such evidence is given, where that evidence could potentially sway the ultimate determination of the claimant's case toward a finding of disability. This is not a demanding standard. Morris v. Comm'r of Soc. Sec., 2012 WL 4953118, at *11 (W.D. Mich. Oct. 17, 2012).

Contending that the standard has not been met here, plaintiff first cites the opinion letter and treatment notes of Brandee Madden, APN, as having been entirely disregarded by the ALJ. However, Ms. Madden's letter (Tr. 477) is dated April 11, 2012, five months after the issuance of the ALJ's decision; it is included in the record as an exhibit in support of plaintiff's appeal to the Appeals Council (Tr. 4), and is therefore not relevant to this review of the ALJ's decision. Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001). Contrary to plaintiff's assertion, there are no notes of her treatment with Ms. Madden in the record. It is for these reasons that the ALJ's decision makes no mention of this provider. Plaintiff next cites the records of her chiropractor, Aaron Workman, who successfully treated plaintiff's pain complaints from April through August of 2006. (Tr. 187-262) Again, plaintiff last saw Dr. Workman years before her alleged onset of disability, during a time when she continued to work full time. Accordingly, there was no need for the ALJ to make explicit mention of these records in his decision.

Lastly, plaintiff cites the medical source statements of Adrienne Hollis, APN, and Sheila Levine, LCSW, as having been summarily swept aside without proper explanation. (Docket Entry No. 16-1 at 15-16) However, the ALJ did in fact devote considerable attention to these medical source statements, adequately explaining his reasons for giving little weight to either:

> Adrienne Hollis, APN, completed a mental medical source statement in February 2011. Ex. 21F. Ms. Hollis opined that the claimant had marked limitations in the ability to function in all areas, including completing even simple tasks. These limitations are inconsistent with the evidence, which includes a [January] 2011 treatment note in which the claimant reported independently caring for her grandchild. Ex. 20F. The claimant would not be able to function, let alone care for a 7 year old girl, with these marked

limitations. Further, this medical source statement was completed by an advanced practice nurse, not a treating physician, psychologist, or psychiatrist.[2] The claimant admitted in her function report that she does some shopping and driving, indicating an ability to concentrate to some degree, as well as some ability to interact with others. She was able to interact appropriately at the hearing. In addition, she indicated that she goes to church and sporting events 2 times per week. Ex. 4E. Again, the claimant was able to complete the function report by herself, thus demonstrating some ability to concentrate. As noted above, Ms. Hollis' opinion is inconsistent with the evidence of record and is therefore given little weight.

The claimant's social worker, Sheila Levine, completed a medical source statement contained in Exhibit 10F. This opinion consists mainly of a number of questions with an area to check either "Yes" or "No." The responses are somewhat inconsistent with the opinion provided at Exhibit 21F. For example, Ms. Levine indicated that the claimant is capable of remembering and carrying out simple, 1-2 step instructions and maintaining a work routine without frequent breaks for stress-related reasons. Ms. Hollis had indicated that the claimant had a "marked" limitation in understanding, remembering, and carrying out even simple instructions. Although Ms. Levine indicated that the claimant would not be able to maintain a regular work schedule without missing frequently due to psychological issues, she also indicated that the claimant can maintain an ordinary work routine without inordinate supervision and can respond appropriately to normal stress and routine changes. Ex. 10F. This opinion is given little weight, as it is inconsistent with the other evidence of record, including the claimant's ability to continue to provide care for her 7-year old granddaughter. In addition, it is from a non-acceptable medical source.

(Tr. 20) This analysis easily comports with the ALJ's obligations under 20 C.F.R. § 404.1513

---

[2]In fact, it appears that the medical source statement bearing Ms. Hollis' signature was completed by Meaghan Baker, BSCM, the case manager who coordinated plaintiff's medical and therapeutic care at the Mental Health Cooperative (MHC). (Tr. 469, 474) The medical source statement relies exclusively and explicitly upon the Tennessee Clinically Related Group (CRG) assessment completed by Ms. Sarah Mallory on December 21, 2010, upon plaintiff's intake to the MHC. (Tr. 458-60, 466-68) Ms. Baker subsequently noted plaintiff's report that she had been feeling better since acquiring MHC services, and that she believed her medications were working well for her. (Tr. 461)

and SSR 06-3p. The undersigned finds no error here.

Plaintiff next argues that the ALJ failed to properly consider the functional effects of her Major Depressive Disorder, Moderate, In Partial Remission, in that he did not account for any corresponding loss of function when determining plaintiff's RFC, and when presenting hypothetical questions based on that RFC to the vocational expert. However, the ALJ fully explained his rationale for giving greatest weight to the mental health assessments of Drs. Brandau and Hansmann, in that order. (Tr. 19) He also made clear that Dr. Brandau's assessment of moderate limitations in plaintiff's ability to sustain concentration and adapt to change, as well as in her long term and remote memory functioning, aligned with the other evidence of record and was therefore found to accurately describe the limitations attributable to plaintiff's depression and anxiety. Id. The ALJ incorporated such limitations into his RFC finding by including restrictions to "simple, repetitive, routine tasks" in a workplace where any changes should be "gradual and infrequent." (Tr. 15) These restrictions were included in the hypothetical question posed to the vocational expert. (Tr. 51) The undersigned finds no error in the ALJ's handling of the issue of plaintiff's mental impairments and limitations.

Plaintiff next argues that the ALJ erred in "summarily reject[ing] the opinion of Dr. Julie Perrigin, Cochran's treating physician, dismissing her out of hand." (Docket Entry No. 16-1 at 18) Again, this assertion is manifestly untrue. The ALJ gave the following rationale for rejecting Dr. Perrigin's restrictive assessment of plaintiff's capabilities, including complete restriction against nearly all manipulative and postural activities:

> Dr. Perrigin's opinion is inconsistent with her own treatment notes and is too
> extreme. For instance, although her opinion states that the claimant can never

handle, finger, feel, push/pull, or reach overhead with either extremity, nor do any postural activities, the claimant can obviously perform some of these activities, as she takes care of her young granddaughter. Further, the claimant handwrote her function report at [Exhibit] 4E, so she can obviously use her hands to write. She indicated in her report that she also drives and reported to a consultative examining psychologist that she drives daily. Ex. 4E, 12F. Dr. Perrigin's opinion is overly restrictive and inconsistent with the evidence of record. As a result, it is given little weight.

(Tr. 19) A treating physician's opinion, even if not entitled to controlling weight, is nonetheless entitled to deferential consideration in view of the following factors: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527([c])(2)). In this case, the ALJ found Dr. Perrigin's opinion to be unsupported by her own treatment notes, and inconsistent with plaintiff's demonstrated physical abilities and the other opinion evidence of record. The undersigned finds these reasons to be good and sufficient for the rejection of Dr. Perrigin's assessment. To be sure, the medical record demonstrates plaintiff's consistent attempts to achieve relief of her pain, and her providers' consistent treatment of that pain. Notably, however, the ALJ did not reject her allegations of pain-related limitation; indeed, he found that the objective medical evidence and plaintiff's partially credible allegations supported a level of pain that would not allow for the medium exertional capacity which the nonexamining consultants assessed (Tr. 18-19), but instead allowed only light exertion. The ALJ properly noted the inconsistency between Dr. Perrigin's dire assessment on the one hand, and her treatment notes and plaintiff's demonstrated physical abilities on the other.

(Tr. 20)  Good reasons were given for the rejection of Dr. Perrigin's assessment.  While plaintiff complains that the daily activity level involved in childcare and her other endeavors was overemphasized by the ALJ in determining her credibility and weighing Dr. Perrigin's assessment, it is not for this Court to re-weigh the evidence or decide questions of credibility.  See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).  The undersigned finds no error here.

In sum, the decision of the ALJ in this case is supported by substantial evidence on the record as a whole, and should therefore be affirmed.


## IV.  Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court.  Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections.  Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

ENTERED this 22nd day of June, 2016.

_s/ John S. Bryant_____
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE